IN THE COURT OF APPEALS OF THE STATE OF IDAHO

Docket No. 37140

| STATE OF IDAHO, | ) | 2011 Unpublished Opinion No. 317 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: January 11, 2011 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| JAMES ANDREW ALLEN, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Second Judicial District, State of Idaho, Latah County. Hon. John R. Stegner, District Judge.

Order revoking probation and requiring execution of sentences, <u>affirmed</u>.

Nevin, Benjamin, McKay & Bartlett LLP; Deborah A. Whipple, Boise for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent.

_____

GUTIERREZ, Judge

James Andrew Allen appeals from the district court's order revoking his probation and executing the previously imposed sentences. We affirm.

## I.

## FACTS AND PROCEDURE

A jury found Allen guilty of rape, attempted rape, and intimidating a witness, arising from his actions towards T.H., a woman with whom he had an intermittent romantic relationship over the course of eight years. The district court imposed a unified sentence of ten years with two years determinate for the rape conviction and concurrent unified sentences of five years with one year determinate for the two remaining convictions, but retained jurisdiction.

Less than two months later, the court was notified that Allen was not making progress in the retained jurisdiction program because he was refusing to participate in sex offender treatment. The court conducted a status conference where it directed Allen to resume

1

participation in the program. Following the period of retained jurisdiction, the court suspended execution of Allen's sentences and placed him on probation for ten years.

Within a few weeks, the state filed a report alleging probation violations, specifically that Allen had violated his curfew, had violated the no-contact order with the victim, and had failed to comply with his electronic monitoring agreement. The state filed an addendum alleging that according to GPS data, Allen had been in the "exact vicinity" of the victim's car during the time it was vandalized. Allen thereafter entered into a stipulation admitting to violating probation by initiating contact with the victim, and in exchange the state agreed to withdraw the remaining allegations. The parties further agreed that the appropriate disposition would be for the court to leave Allen on probation with the additional condition that he immediately transfer supervision to the state of Louisiana and not return to Idaho without written permission of the court.

Through an interstate compact, Allen's probation was transferred to Louisiana. The terms of the transfer required that Allen comply with the conditions of supervision placed on him by both Idaho and Louisiana, and specified that failure to comply with such terms and conditions would be considered a probation violation.

Several months later, Allen attended a scheduled meeting with his Louisiana probation officer where he was given a "random drug screen." After two tests administered in the office came back positive for cocaine, Allen was arrested. Pursuant to Louisiana procedure, a "preliminary hearing" was held during which Allen admitted to drug use and a hearing officer concluded that there was probable cause to believe that Allen had violated his probation by testing positive for cocaine, failing to obtain gainful and regular employment where he had been working for his family's business but was not "on the books," and failing to attend sex offender treatment on three different occasions. The state of Idaho then filed a report of violation in Idaho, alleging these three violations. Allen was returned to Idaho and the district court held an evidentiary hearing. At the conclusion of the hearing, the court found substantial reliable evidence that Allen had violated his probation as alleged, revoked his probation, and ordered the suspended sentences executed. Allen now appeals the revocation of his probation and, in the alternative, the court's failure to reduce the underlying sentences when ordering their execution.

## II.

## ANALYSIS

## A.     Revocation of Probation

Allen argues that the district court erred in revoking his probation upon the court's findings that Allen had violated the "gainful employment" and drug use conditions of his probation. Specifically, he contends the court erred because: (1) he did not violate the "gainful" employment condition of his probation where he had been working for his family's business; (2) that even if he did violate the employment clause, the court erred in revoking probation on that basis without first considering alternatives to revocation; (3) his right to confront witnesses was violated "when evidence of the drug screening test given in Louisiana was admitted without allowing [him] to confront the anonymous male officer who supervised the collection of the urine  samples"; and (4) the evidence that Allen violated his probation by using drugs was insufficient.  Overall, Allen contends that because two of the three violations found by the district court were erroneous, the case must be remanded for the district court to determine whether revocation of probation continues to be appropriate.[1]

In reviewing a probation revocation proceeding, we use a two-step analysis. *State v. Sanchez*, 149 Idaho 102, 105, 233 P.3d 33, 36 (2009); *State v. Knutsen*, 138 Idaho 918, 923, 71 P.3d 1065, 1070 (Ct. App. 2003).  First, we ask whether the defendant violated the terms of his probation. *Knutsen*, 138 Idaho at 923, 71 P.3d at 1070.  A district court's finding of a probation violation will be upheld on appeal if there is substantial evidence in the record to support the finding. *Sanchez*, 149 Idaho at 105, 233 P.3d at 36; *State v. Lafferty*, 125 Idaho 378, 381, 870 P.2d 1337, 1340 (Ct. App. 1994).  This first step involves a wholly retrospective factual question. *Morrissey v. Brewer*, 408 U.S. 471, 479 (1972); *Sanchez*, 149 Idaho at 105, 233 P.3d at 36.  To comply with the principles of due process, a court may revoke probation only upon evidence that the probationer has in fact violated the terms or conditions of probation. *Sanchez*, 149 Idaho at 105, 233 P.3d at 36; *Lafferty*, 125 Idaho at 381, 870 P.2d at 1340.  In the event of conflicting evidence, we will defer to the district court's determinations regarding the credibility

---

[1]     Allen does not challenge the third basis upon which the court based its revocation:  that he had failed to attend the requisite sex offender treatment classes.

3

of witnesses. *Sanchez*, 149 Idaho at 105, 233 P.3d at 36; *Knutsen*, 138 Idaho at 923, 71 P.3d at 1070.

If it is determined that the defendant has in fact violated the terms of his probation, the second question is what should be the consequence of that violation. *Knutsen*, 138 Idaho at 923, 71 P.3d at 1070. The determination of whether a probation violation has been established is separate from the decision of what consequence, if any, to impose for that violation. *Sanchez*, 149 Idaho at 105, 233 P.3d at 36; *State v. Thompson*, 140 Idaho 796, 799, 102 P.3d 1115, 1118 (2004). A district court's decision to revoke probation will not be overturned on appeal absent a showing that the court abused its discretion. *Sanchez*, 149 Idaho at 105, 233 P.3d at 36; *Lafferty*, 125 Idaho at 381, 870 P.2d at 1340. In reviewing the court's discretionary decision, we conduct an inquiry to determine whether the court correctly perceived the issue as one of discretion, acted within the boundaries of such discretion and consistently with the applicable legal standards, and reached its decision by an exercise of reason. *Sanchez*, 149 Idaho at 105-06, 233 P.3d at 36-37; *Knutsen*, 138 Idaho at 923, 71 P.3d at 1070.

One applicable legal standard the district court must utilize in determining whether to revoke probation is based upon whether the violation was willful or non-willful:

> If a knowing and intentional probation violation has been proved, a district court's decision to revoke probation will be reviewed for an abuse of discretion. However, if a probationer's violation of a probation condition was not willful, or was beyond the probationer's control, a court may not revoke probation and order imprisonment without first considering alternative methods to address the violation.

*Sanchez*, 149 Idaho at 106, 233 P.3d at 37 (quoting *State v. Leach*, 135 Idaho 525, 529, 20 P.3d 709, 713 (Ct. App. 2001)). Where a violation is determined to be non-willful, only if the trial court determines that alternatives to imprisonment are not adequate in a particular situation to meet the state's legitimate interest in punishment, deterrence, or the protection of society, may the court imprison a probationer who has made sufficient, genuine efforts to obey the terms of the probation order. *Leach*, 135 Idaho at 529, 20 P.3d at 713.

### 1. Drug use violation

Allen contends that the court erred in finding that he had violated his probation by using drugs because admission of evidence relating to the drug screening test violated his state and federal constitutional rights to confrontation and, in the alternative, there was not sufficient

credible evidence to find that he had violated the conditions of his probation by using drugs. Thus, he contends, there was not reliable evidence that he had used drugs.

### a. Right to confrontation

Allen asserts that the federal and state constitutions guarantee the right to confront witnesses in probation hearings, and his right to do so was violated where evidence of the results of the drug screening test given in Louisiana was admitted without allowing him to confront the "anonymous male officer" who supervised the collection of the urine samples. Therefore, Allen contends, admission of the evidence relating to the drug screening test should not have been admitted.

Probationers do not enjoy the full panoply of constitutional protections afforded criminal defendants. *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972); *State v. Rose*, 144 Idaho 762, 765, 171 P.3d 253, 256 (2007). *See also Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (applying *Morrissey* to probationers). A motion to revoke probation is not a criminal prosecution. *Gagnon*, 411 U.S. at 782; *Rose*, 144 Idaho at 766, 171 P.3d at 257; *State v. Crowe*, 131 Idaho 109, 112, 952 P.2d 1245, 1248 (1998). Consequently, the Sixth Amendment's Confrontation Clause, which grants to criminal defendants the right to confront adverse witnesses, does not apply to probationers. *Morrissey*, 408 U.S. at 480; *United States v. Hall*, 419 F.3d 980, 985 (9th Cir. 2005); *Rose*, 144 Idaho at 766, 171 P.3d at 257. *See also State v. Moore*, 93 Idaho 14, 17, 454 P.2d 51, 54 (1969) (recognizing circumstances under which a probationer may be denied confrontation).

Still, a probationer has a protected liberty interest in continuing probation, and is therefore entitled to due process before probation may be revoked. *Rose*, 144 Idaho at 766, 171 P.3d at 257. In *Morrissey*, the Court established minimum due process requirements for probation and parole revocation proceedings under the Fourteenth Amendment. Among other protections, a probationer has the right to confront and cross-examine adverse witnesses unless the district court specifically finds good cause for not allowing confrontation. *Morrissey*, 408 U.S. at 489; *Rose*, 144 Idaho at 766, 171 P.3d at 257; *State v. Chapman*, 111 Idaho 149, 151, 721 P.3d 1248, 1250 (1986).

Allen concedes that he did not raise this issue below. This Court will typically not address an issue not preserved for appeal by an objection in the trial court. *State v. Rozajewski*, 130 Idaho 644, 645, 945 P.2d 1390, 1391 (Ct. App. 1997). However, we may consider

fundamental error in a criminal case,[2] even though no objection was made at trial. *Id.* Recently in *State v. Perry*, ___ Idaho ___, ___ P.3d ___ (Dec. 7, 2010), our Supreme Court clarified this state's fundamental error doctrine, stating that in cases of unobjected-to error:

> (1) the defendant must demonstrate that one or more of the defendant's unwaived constitutional rights were violated; (2) the error must be clear or obvious, without the need for any additional information not contained in the appellate record, including information as to whether the failure to object was a tactical decision; and (3) the defendant must demonstrate that the error affected the defendant's substantial right, meaning (in most instances) that it must have affected the outcome of the trial proceedings.

The record does not support a showing of fundamental error under *Perry's* second prong- that the error be "plain" and not a tactical decision. Counsel's failure to object might be because he feared examination of the officer would reveal that the tests *were* reliable, and thought Allen would be better served by arguing that the state's evidence on reliability was insufficient. The implication of a tactical decision regarding confrontation, or lack thereof, of the officer who supervised the collection of the urine samples precludes a finding of fundamental error.

### b. Sufficiency of drug use evidence

Allen further asserts that the drug screening test results were unreliable because there was no testimony establishing the reliability of the test in general and the accuracy in Allen's case in particular, and his admission to drug use was unreliable because it was made at a hearing where he had allegedly been unconstitutionally deprived of his right to counsel.

In a probation revocation proceeding, the Idaho Rules of Evidence do not apply. I.R.E. 101(e)(3); *State v. Peters*, 119 Idaho 382, 382, 807 P.2d 61, 61 (1991); *State v. Farmer*, 131 Idaho 803, 805, 964 P.2d 670, 672 (Ct. App. 1998); *State v. Egersdorf*, 126 Idaho 684, 685, 889 P.2d 118, 119 (Ct. App. 1995). However, the admission of evidence is not unbridled; evidence should only be admitted at a probation revocation hearing if it is found to be credible and reliable. *Farmer*, 131 Idaho at 805, 964 P.2d at 672; *State v. Nez*, 130 Idaho 950, 953, 950 P.2d 1289, 1292 (Ct. App. 1997); *Egersdorf*, 126 Idaho at 686, 889 P.2d at 120. This is because, as we noted:

---

[2] Our fundamental error jurisprudence is largely contained in the context of trial error. However, in *State v. Prelwitz*, 132 Idaho 191, 193, 968 P.2d 1100, 1102 (Ct. App. 1998), this Court specifically applied the fundamental error doctrine to a probation revocation proceeding.

> What is needed is an informal hearing structured to assure that the finding of a parole violation will be based on *verified facts* and that the exercise of discretion will be informed by an *accurate knowledge of the parolee's behavior*.

*Egersdorf*, 126 Idaho at 686, 889 P.2d at 120 (quoting *Morrissey*, 408 U.S. at 484) (emphasis added). We review factual findings under a clearly erroneous standard. I.R.C.P. 52(a); *Farmer*, 131 Idaho at 805, 964 P.2d at 672; *Egersdorf*, 126 Idaho at 686, 889 P.2d at 120.

### 1) Drug tests

Allen contends that the district court erred in admitting evidence of his two positive drugs tests because the results were not shown to be reliable and credible where there was no evidence regarding the reliability of the tests in general, nor of proper administration of the tests in this instance. The state points out that Allen did not object to this evidence below on grounds that it was unreliable.

We conclude that even if we assume error, Allen cannot meet his burden of showing that there is a reasonable possibility that the error affected the outcome of the proceeding. *See Perry*, ___ Idaho at ___, ___ P.3d at ___. Even had the evidence of the positive drug tests been excluded, there still remains Allen's admission that he had used cocaine, which, as we discuss below, the court properly considered.

### 2) Allen's admission

Allen contends, for the first time on appeal, that his uncounseled admission at the Louisiana administrative hearing that he had used cocaine was procured in violation of his rights to due process and counsel under *Gagnon*, 411 U.S. 778, and thus the district court erred in considering it. As we noted above, where an error was not followed by a contemporaneous objection, it will only be reviewed where the defendant demonstrates that one of his unwaived constitutional rights was plainly violated. *Perry*, ___ Idaho at ___, ___ P.3d at ___. If the defendant meets this burden, then we will review the error under the harmless error test, with the defendant bearing the burden of proving there is a reasonable possibility that the error affected the outcome of the trial. *Id.*

Here, we conclude that the alleged error was not fundamental, because Allen has not shown that his rights to due process and to counsel were "plainly violated" when he was not appointed counsel at the Louisiana hearing. The *Perry* Court expounded on the "plain error" factor, stating that the error "must be clear or obvious, without the need for any additional

information not contained in the appellate record, including information as to whether the failure to object was a tactical decision . . . ." *Id.* at ___, ___ P.3d at ____. In addition, the federal courts have long applied the concept of "plain error" under Federal Rule of Criminal Procedure 52(b)[3] and provide helpful elucidation of the issue. In *United States v. Olano*, 507 U.S. 725, 734 (1993), the United States Supreme Court held that one of the limitations on appellate authority under Rule 52(b) is that the error be "plain." "Plain" is synonymous with "clear" or, equivalently, "obvious." The court further clarified the test, stating that "[a]t a minimum, court of appeals *cannot* correct an error pursuant to Rule 52(b) unless the error is clear under current law." *Id.* (emphasis added).

The hearing held in Louisiana was not a traditional probation revocation hearing; rather, it employed a procedure that Idaho does not have, which is an administrative hearing conducted for the sole purpose of determining whether there was probable cause to believe there had been a violation of the conditions of probation. If the hearing officer finds such probable cause, the case is referred to the court for the actual probation revocation hearing, which is what ultimately occurred in this case in Idaho. In Louisiana, the only probationers entitled to counsel at the preliminary hearings are those who are mentally incompetent or are otherwise unable to understand the proceedings. Allen's Louisiana probation officer testified that Allen did not meet these qualifications to be appointed counsel.

Allen argues that pursuant to *Gagnon*, he was unequivocally entitled to counsel at the Louisiana administrative hearing. However, as the state points out, the *Gagnon* Court found no justification for a new inflexible constitutional rule with respect to the requirement of counsel at preliminary or final probation or parole revocation proceedings. *Gagnon*, 411 U.S. at 790. Rather, the Court held that the decision as to the need for counsel must be made on a *case-by-case basis* in the exercise of sound discretion by the state authority charged with responsibility for administering the probation and parole system. *Id.* The Court further noted that "the presence and participation of counsel will probably be both undesirable and constitutionally unnecessary in most revocation hearings . . . ." *Id.* While declining to formulate a "precise and detailed set of guidelines" to be followed when considering whether counsel must be provided to

---

[3] Federal Rule of Criminal Procedure 52(b) provides that a "plain error that affects substantial rights may be considered even though it was not brought to the court's attention."

meet applicable due process requirements, the Court indicated counsel should be provided in cases where:

> after being informed of his right to request counsel, the probationer or parolee makes such a request, based on a timely and colorable claim (i) that he has not committed the alleged violation of the conditions upon which he is at liberty; or (ii) that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present. In passing on a request for the appointment of counsel, the responsible agency also should consider, especially in doubtful cases, whether the probationer appears to be capable of speaking effectively for himself.

*Id.* at 790-91. Thus, the issue is not clear-cut as Allen argues. Rather, it required a discretionary, case-by-case analysis, the outcome of which is not "clear or obvious, without the need for any additional information not contained in the appellate record" as is required on plain error under our fundamental error analysis. *See Perry*, ___ Idaho at ___, ___ P.3d at ___.

We note that under Idaho law, the case-by-case analysis of *Gagnon* is inapplicable because our legislature has created an unequivocal statutory right to counsel that applies at "all stages of the matter beginning with the earliest time when a person providing his own counsel would be entitled to be represented by an attorney and including revocation of probation." *State v. Lindsay*, 124 Idaho 825, 828, 864 P.2d 663, 666 (Ct. App. 1993) (quoting Idaho Code § 19-852). Whether this would change the analysis of Allen's right to counsel in the Louisiana proceeding is unclear as it is dependant upon Idaho's choice of law doctrine to determine whether Idaho law or Louisiana law applies. The Idaho Supreme Court has adopted the "most significant contacts" test to determine choice of law issues. *State v. Jones*, 125 Idaho 477, 486, 873 P.2d 122, 131 (1994); *Johnson v. Pischke*, 108 Idaho 397, 399-400, 700 P.2d 19, 21-22 (1985). The "significant contacts" test entails a two-step process. First, the court must examine certain significant "contacts" with each state having an interest in the issue according to the relative importance of the contacts to the particular issue. Second, the court must examine the contacts in light of the principles underlying the area of law and the law of the relative jurisdictions. *Jones*, 125 Idaho at 486-87, 873 P.2d at 131-32. Like the *Gagnon* analysis above, the outcome of such an analysis is neither clear nor obvious, nor do we have sufficient information in the appellate record to conduct such an analysis; thus, it cannot constitute fundamental error.

9

Allen testified at the Idaho revocation hearing that he had not used cocaine prior to taking the drug tests and had not expected to fail the drug tests, that he had only admitted to using drugs in the Louisiana hearing because he had "failed two tests" and "lack[ed] the understanding and the means needed to challenge the test." He contends that this testimony establishes that his admission was "unreliable." It is well settled that a trial judge is in a far better position than this Court to weigh the demeanor, credibility and testimony of witnesses and the persuasiveness of all the evidence, and therefore decisions regarding the credibility of witnesses, weight to be given to conflicting evidence, and factual inferences to be drawn are also within the discretion of the trial court. *State v. Munoz*, 149 Idaho 121, 128, 233 P.3d 52, 59 (2010). That the district court did not accept Allen's contention that he had not used drugs and his attempt to explain why he had allegedly falsely admitted to doing so does not render the evidence unreliable. As we indicated above, we will overturn factual findings only if they are clearly erroneous, and such is not the case here.

Having determined that the court did not err in considering Allen's admission of drug use, we also conclude that this admission constitutes substantial, reliable evidence supporting the district court's finding that Allen violated the drug use condition of his probation.

### 2. Gainful employment violation

Allen also challenges the district court's finding that he violated the employment condition of his parole, specifically contending there was insufficient evidence for the court to have found that he violated the condition or, in the alternative, that the district court erred in failing to consider whether the violation of this condition was willful and thus, to consider whether there were appropriate alternatives to revocation. We need not address these contentions, however, for even if we assume error, remand would be unnecessary as it is evident from the record that the district court would have revoked probation even absent this particular violation. Ordinarily, when a discretionary ruling has been tainted by a legal or factual error, we vacate the decision and remand the matter for a new, error-free discretionary determination by the trial court. *State v. Medrain*, 143 Idaho 329, 333, 144 P.3d 34, 38 (Ct. App. 2006); *State v. Upton*, 127 Idaho 274, 276, 899 P.2d 984, 986 (Ct. App. 1995). However, a remand may be avoided where it is apparent from the record that the result would not change or that a different result would represent an abuse of discretion. *Upton*, 127 Idaho at 276, 899 P.2d at 986.

10

In this instance, it is clear that Allen's employment situation had little, if any, effect on the court's decision. The district court specifically stated that its "decision today as to disposition is not going to turn significantly on his lack of employment. I consider the fact that he was working, albeit under the table, mitigating to Mr. Allen." Rather, in revoking probation, the court had in mind the uncontroverted evidence that Allen had failed to adhere to the probation requirement that he attend sex offender classes and that he had used cocaine in violation of his probation. There was also emphasis placed on Allen's lack of rehabilitation efforts. Specifically, less than two months after the court initially suspended Allen's sentences and retained jurisdiction, the institution where Allen was being held (NICI) sent a letter updating the court on Allen's "lack of progress" in the retained jurisdiction program, specifically indicating that Allen had refused to participate in sex offender treatment. Then, within weeks after the court placed Allen on probation, the state alleged that Allen violated curfew, the no-contact order with the victim, and the electronic monitoring agreement. Allen does not dispute that he also failed to follow through with sex offender treatment upon transfer to Louisiana. Thus, it was in light of Allen's multiple failures to perform satisfactorily on retained jurisdiction and probation that the court eventually revoked probation, stating:

> [Defense counsel], you asked that I place Mr. Allen back on probation. As hard as it is for me to recognize it, I think that would be the triumph of hope over experience. Mr. Allen has done nothing, I think, to warrant yet another vote of confidence in his ability to perform on probation . . . .

It is clear from the record that the gainful employment violation had little effect on the court's decision to revoke probation. Ultimately, Allen's admission to using cocaine, combined with his uncontested violation of the sex offender treatment requirements, leads us to conclude that the district court did not abuse its discretion in revoking Allen's probation.

## B.     Rule 35 Motion

Allen argues that even if this Court concludes that the district court did not err in revoking his probation, we should conclude that the court erred in failing to *sua sponte* reduce his sentences upon revocation of probation. Allen contends that given his "unique situation," the court's decision to order execution of the underlying sentences was an abuse of discretion.

After a probation violation has been established, the court may order that the suspended sentence be executed or, in the alternative, the court is authorized under Idaho Criminal Rule 35 to reduce the sentence. *State v. Hanington*, 148 Idaho 26, 28, 218 P.3d 5, 7 (Ct. App. 2009);

11

*State v. Beckett*, 122 Idaho 324, 325, 834 P.2d 326, 327 (Ct. App. 1992); *State v. Marks*, 116 Idaho 976, 977, 783 P.2d 315, 316 (Ct. App. 1989). A decision to refuse to reduce the sentence earlier pronounced will be disturbed on appeal only upon a showing that the trial court abused its discretion. *Hanington*, 148 Idaho at 28, 218 P.3d at 7; *Marks*, 116 Idaho at 978, 783 P.2d at 317.

Sentencing is also a matter for the trial court's discretion. Both our standard of review and the factors to be considered in evaluating the reasonableness of a sentence are well established and need not be repeated here. *See State v. Hernandez*, 121 Idaho 114, 117-18, 822 P.2d 1011, 1014-15 (Ct. App. 1991); *State v. Lopez*, 106 Idaho 447, 449-51, 680 P.2d 869, 871-73 (Ct. App. 1984); *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982). When reviewing the length of a sentence, we consider the defendant's entire sentence. *State v. Oliver*, 144 Idaho 722, 726, 170 P.3d 387, 391 (2007). When we review a sentence that is ordered into execution following a period of probation, we will examine the entire record encompassing events before and after the original judgment. *Hanington*, 148 Idaho at 29, 218 P.3d at 8. We base our review upon the facts existing when the sentence was imposed as well as events occurring between the original sentencing and the revocation of probation. *Id*.

Applying the foregoing standards, and having reviewed the record in this case, we cannot say that the district court abused its discretion by ordering execution of Allen's original sentences without modification.

### III.

### CONCLUSION

There was substantial reliable evidence for the district court to find that Allen violated the drug use condition of his probation and this fact, combined with the uncontested finding that Allen had also violated the condition that he attend sex offender treatment, leads us to conclude that the court did not abuse its discretion in revoking Allen's probation. We also conclude that the court did not abuse its discretion in ordering the execution of Allen's full underlying sentences without modification. Accordingly, the district court's order revoking Allen's probation and ordering his sentences executed is affirmed.

Chief Judge GRATTON and Judge LANSING **CONCUR**.

12